# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| TROY RIGGS and SHANNON RIGGS, individually and on behalf of minor child GRACE RIGGS<br>*Plaintiff*<br><br>**-v-**<br><br>MARY IMMACULATE QUEEN SCHOOL<br>*Defendant* | Case No.__________________________<br><br>**COMPLAINT AND JURY DEMAND** |

**CIVIL ACTION**

*This case arises from the discriminatory and unlawful expulsion of a 10-year-old student, Grace Riggs, from Mary Immaculate Queen School ("MIQ"), a private Catholic institution in Lemoore, California. Despite her exemplary academic record and tuition paid in full, Grace was summarily removed from class and barred from returning—without due process, disciplinary hearing, or parental engagement. The school's actions were motivated, in part, by racial bias and retaliation, violating federal civil rights protections and breaching contractual obligations.*

Plaintiffs TROY RIGGS and SHANNON RIGGS, individually and on behalf of minor child GRACE RIGGS, by way of Complaint against the Defendant, MARY IMMACULATE QUEEN SCHOOL, hereby state as follows:

**THE PARTIES**

1. At all times relevant herein, Plaintiff TROY RIGGS was and is an adult resident of Kings County, California, and the legal guardian of minor Plaintiff GRACE RIGGS. He resides at 1567 Persimmon Street, Lemoore, California 93245.

2. At all times relevant herein, Plaintiff SHANNON RIGGS was and is an adult resident of Kings County, California, and the legal guardian of minor Plaintiff GRACE RIGGS. She resides at 1567 Persimmon Street, Lemoore, California 93245.

3. At all times relevant herein, Plaintiff GRACE RIGGS was and is the minor child of Plaintiffs TROY and SHANNON RIGGS, and was enrolled as a student at Defendant MARY IMMACULATE QUEEN SCHOOL. She resides with her parents at 1567 Persimmon Street, Lemoore, California 93245.

4. At all times relevant herein, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") was and is a private educational institution operating in the State of California, with its principal place of business located at 884 North Lemoore Avenue, Lemoore, California 93245, in Kings County.

5. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

6. All of Plaintiff's claims stated herein are asserted against Defendant MARY IMMACULATE QUEEN SCHOOL and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert claims arising under federal law, including 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964. Supplemental jurisdiction over related state law claims is proper under 28 U.S.C. § 1367.

8. Defendant MARY IMMACULATE QUEEN SCHOOL receives federal financial assistance and is therefore subject to Title VI and other federal civil rights statutes.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in Kings County, California, which lies within the Eastern District of California. Defendant MIQ also resides and conducts business within this district.

## FACTUAL BACKGROUND

10. Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") is a private Catholic educational institution located in Kings County, California, with its principal campus at 884 North Lemoore Avenue, Lemoore, CA 93245. MIQ offers primary education and receives federal financial assistance, subjecting it to Title VI of the Civil Rights Act.

11. Plaintiff GRACE RIGGS was enrolled at MIQ for the 2024–2025 academic year. Her parents, Plaintiffs TROY and SHANNON RIGGS, paid tuition totaling $6,347, as documented in **EXHIBIT A** - MIQ Payment Summary and related financial records.

12. Grace Riggs consistently earned excellent grades, receiving all A's and one B, and had no history of disciplinary infractions. Her cumulative file, academic records, and internal notes confirm her strong academic performance and positive conduct.

13. On or about February 6–7, 2025, Grace was involved in a minor verbal exchange with another student, Cathleen, who had a documented history of targeting Grace. Internal notes and prior correspondence reflect ongoing interpersonal conflict between the two students, which had been previously reported to school staff by the Riggs family.

14. Upon information and belief, during the incident, Grace was singing outside when Cathleen instructed her to stop. Grace responded that she did not have to listen to Cathleen, referencing prior parental guidance. The teacher, upon hearing this, instructed Grace to go outside

alone, despite MIQ's own safety policy prohibiting students from being outside without adult supervision.

15. Upon information and belief, when Grace hesitated to comply with the unsafe directive, the teacher became visibly hostile and stated, "I don't want you here today. I don't want you in my class." Grace was then escorted to the principal's office and removed from the classroom environment.

16. The following day, MIQ staff informed Plaintiffs that Grace was no longer welcome at the school. No disciplinary hearing was held. No written notice of expulsion was provided. No parent-teacher conference was offered. The school failed to follow its own disciplinary procedures as outlined in the MIQ Parent-Student Handbook.

17. MIQ presented Plaintiffs with a withdrawal form. Plaintiff TROY RIGGS refused to accept the characterization of voluntary withdrawal, crossed out the word "withdraw," and wrote "we were forced to leave and asked not to come back," then initialed the form. This document is included in the record as **EXHIBIT B** - Withdrawal form".

18. The classroom teacher involved in the incident is Hispanic, as are the majority of students in Grace's class. Grace is Caucasian and one of only three white students in the classroom. Plaintiffs reasonably believe that race was a motivating factor in Grace's exclusion, particularly given the teacher's disproportionate response and the school's failure to apply its disciplinary policies uniformly.

19. Plaintiffs paid tuition and fees in reliance on MIQ's representations regarding educational services, disciplinary fairness, and student safety. The school's abrupt exclusion of Grace, without process or refund, constitutes breach of contract and unjust enrichment.

20. As a result of MIQ's actions, Grace suffered emotional distress, including anxiety and feelings of rejection. She was evaluated by a medical professional and referred for

counseling. The family was forced to seek alternative educational arrangements, incurring additional financial and emotional burdens.

21. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs TROY and SHANNON RIGGS suffered significant emotional distress, reputational harm, and financial injury. The abrupt exclusion of their daughter from school, without warning, due process, or justification, caused them anguish, humiliation, and disruption to their family life. They were denied the opportunity to advocate for their child, forced to navigate alternative educational arrangements under duress, and compelled to absorb the financial burden of prepaid tuition for services that were never rendered. The school's actions undermined their trust, damaged their standing within the community, and inflicted lasting emotional harm as they witnessed their daughter's distress and academic displacement.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1981
## (RACE DISCRIMINATION IN CONTRACTUAL RELATIONSHIP)

22. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

23. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional private educational institution, capable of providing competent, ethical, and inclusive educational services to students and families in Kings County, California.

24. Plaintiffs TROY and SHANNON RIGGS entered into a contractual relationship with MIQ when they enrolled their daughter, GRACE RIGGS, for the 2024–2025 academic year and agreed to pay tuition totaling $6,347 in exchange for educational services.

25. As part of the enrollment process, MIQ provided Plaintiffs with its Parent-Student Handbook, which outlines the school's disciplinary procedures, behavioral expectations, and

administrative policies. Acceptance of the handbook's terms was a condition of enrollment, and the handbook functioned as a binding regulatory framework governing the contractual relationship between MIQ and the Plaintiffs.

26. MIQ breached this contractual relationship and interfered with Grace Riggs's right to receive educational services by excluding her from the classroom and ultimately barring her from returning to school, without notice, hearing, or adherence to its own disciplinary procedures.

27. Upon information and belief, MIQ's actions were motivated, at least in part, by racial bias. Grace Riggs, a Caucasian student, was one of only three white students in a predominantly Hispanic classroom. The teacher involved in the exclusion is Hispanic, and the school's response to the incident was disproportionate, hostile, and inconsistent with its treatment of similarly situated students.

28. Defendant's conduct violated 42 U.S.C. § 1981 by impairing Plaintiffs' contractual rights on the basis of race, including the right to make and enforce contracts, and to enjoy the benefits of the educational agreement free from racial discrimination.

29. As a result of Defendant's unlawful conduct, Plaintiffs have suffered economic loss, emotional distress, and reputational harm, and are entitled to compensatory damages, punitive damages, attorney's fees, and injunctive relief.

**COUNT II**
**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
***(42 U.S.C. § 2000d et seq.)***

30. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

31. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance.

32. Upon information and belief, Defendant MARY IMMACULATE QUEEN

SCHOOL ("MIQ") receives federal financial assistance, including but not limited to grants, subsidies, and indirect support through tax exemptions and public resources. As such, MIQ is subject to the requirements and prohibitions of Title VI.

33. GRACE RIGGS, a Caucasian student, was one of only three white students in a predominantly Hispanic classroom. The teacher involved in her exclusion is Hispanic, and the classroom demographic reflects a majority of Hispanic students.

34. Despite Grace's exemplary academic record and clean disciplinary history, she was abruptly excluded from the classroom and barred from returning to school following a minor verbal exchange with another student. The school failed to conduct any hearing, provide written notice, or offer parental engagement—procedural safeguards routinely afforded to other students.

35. Plaintiffs reasonably believe that race was a motivating factor in MIQ's decision to exclude Grace, particularly given the teacher's disproportionate response, the school's refusal to follow its own disciplinary procedures, and the absence of any comparable treatment of similarly situated non-white students.

36. MIQ's conduct constitutes unlawful discrimination under Title VI, as it denied Grace the benefits of an educational program on the basis of race.

37. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiffs suffered economic loss, emotional distress, reputational harm, and disruption to Grace's academic development.

38. Plaintiffs are entitled to compensatory damages, injunctive relief, attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief the Court deems just and proper.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**

39. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

40. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional private educational institution, capable of providing competent, ethical, and inclusive educational services to students and families in Kings County, California.

41. By enrolling their daughter, GRACE RIGGS, and paying tuition totaling $6,347, Plaintiffs TROY and SHANNON RIGGS entered into an implied contract with MIQ for the provision of educational services in accordance with the school's stated policies, procedures, and standards of fairness.

42. MIQ's Parent-Student Handbook, presented to Plaintiffs during the enrollment process, outlined the school's disciplinary procedures, behavioral expectations, and administrative protocols. Acceptance of the handbook's terms was a condition of enrollment, and the handbook functioned as a regulatory framework governing the relationship between MIQ and its students and families.

43. Plaintiffs reasonably relied on MIQ's representations that disciplinary matters would be handled in a fair, consistent, and procedurally sound manner, and that students would not be excluded from school without cause, notice, or due process.

44. MIQ breached the implied contract by summarily removing Grace Riggs from the classroom, instructing her to leave school premises in violation of safety protocols, and ultimately barring her from returning—without any disciplinary hearing, written notice, or opportunity for parental engagement.

45. MIQ further breached its obligations by presenting Plaintiffs with a withdrawal form under duress, despite the fact that Grace's exclusion was involuntary and procedurally unsupported. Plaintiff TROY RIGGS was compelled to cross out the word "withdraw" and annotate the form to reflect that the family was "forced to leave and asked not to come back."

46. As a result of Defendant's breach, Plaintiffs were deprived of the educational services for which they paid, suffered financial loss, emotional distress, and were forced to secure alternative educational arrangements for their daughter under urgent and disruptive circumstances.

47. Plaintiffs are entitled to compensatory damages for breach of implied contract, including restitution of tuition paid, consequential damages, and any other relief the Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT

48. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

49. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional private educational institution, capable of providing competent, ethical, and inclusive educational services to students and families in Kings County, California.

50. Upon information and belief, Defendant MIQ receives financial assistance from government sources, including but not limited to scholarships, fellowships, and federal education programs. Defendant also benefits from indirect public support through tax exemptions and the use or loan of public land, further subjecting it to obligations of fairness and accountability.

51. Plaintiffs TROY and SHANNON RIGGS entered into a binding contract with MIQ when they enrolled their daughter, GRACE RIGGS, for the 2024–2025 academic year and agreed to pay tuition totaling $6,347 in exchange for educational services.

52. As part of the enrollment process, MIQ provided Plaintiffs with its Parent-Student Handbook, which outlines the school's disciplinary procedures, behavioral expectations, and administrative protocols. Acceptance of the handbook's terms was a condition of enrollment, and the handbook functioned as a binding regulatory framework governing the relationship between

MIQ and its students and families.

53. The handbook expressly guarantees students certain procedural protections, including but not limited to proper notice of disciplinary allegations, the right to a hearing, post-hearing documentation, and an opportunity to appeal adverse decisions. These provisions form part of the contractual obligations owed to Plaintiffs.

54. MIQ breached the contract by failing to adhere to its own disciplinary procedures when it excluded Grace Riggs from the classroom and ultimately barred her from returning to school—without notice, hearing, documentation, or any opportunity for parental engagement.

55. MIQ further breached its obligations by presenting Plaintiffs with a withdrawal form under coercive circumstances, despite the fact that Grace's exclusion was involuntary and procedurally unsupported. Plaintiff TROY RIGGS was compelled to annotate the form to reflect that the family was "forced to leave and asked not to come back."

56. As a result of Defendant's breach, Plaintiffs were deprived of the educational services for which they paid, suffered financial loss, emotional distress, and were forced to secure alternative educational arrangements for their daughter under urgent and disruptive circumstances.

57. Plaintiffs are entitled to compensatory damages for breach of contract, including restitution of tuition paid, consequential damages, and any other relief the Court deems just and proper.

**COUNT V**
**CONSTRUCTIVE EXPULSION**

58. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

59. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional private Catholic educational institution, capable of providing competent, ethical, and inclusive educational services

to students and families in Kings County, California.

60. Plaintiffs TROY and SHANNON RIGGS entered into a contractual relationship with MIQ when they enrolled their daughter, GRACE RIGGS, for the 2024–2025 academic year and agreed to pay tuition in exchange for educational services.

61. Defendant owed a duty of care to Plaintiffs and their minor child to safeguard her educational access, procedural rights, and academic integrity in accordance with its own policies, the Parent-Student Handbook, contractual obligations, and applicable state and federal law. It was reasonably foreseeable that failure to follow these procedures would result in reputational harm, emotional distress, academic disruption, and denial of fair process.

62. MIQ's actions, including instructing Grace to leave the classroom in violation of safety protocols, excluding her from school without notice or hearing, and refusing to allow her return, constituted a constructive expulsion. These actions were taken without any formal disciplinary process, in direct violation of MIQ's own handbook and policies.

63. Plaintiffs were presented with a withdrawal form under coercive circumstances. Plaintiff TROY RIGGS was compelled to cross out the word "withdraw" and annotate the form to reflect that the family was "forced to leave and asked not to come back," evidencing the involuntary nature of Grace's exclusion and the absence of any procedural safeguards.

64. As a result of Defendant's constructive expulsion, Plaintiffs suffered financial loss, emotional distress, reputational harm, and were forced to secure alternative educational arrangements for their daughter under urgent and disruptive conditions.

65. Plaintiffs are entitled to compensatory damages, restitution, and any other relief the Court deems just and proper.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far

above and incorporates same as if fully set forth at length herein.

67. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional private Catholic institution of general education, capable of providing competent, ethical, and inclusive educational services to students and families.

68. Upon information and belief, Defendant receives financial assistance from government sources, including but not limited to scholarships, fellowships, and federal education programs. Defendant also benefits from indirect public support through tax exemptions and the use or loan of public land.

69. Defendant, through its agents and employees, intentionally and/or recklessly inflicted emotional distress upon Plaintiffs by abruptly excluding GRACE RIGGS from the classroom and campus without notice, hearing, or adherence to its own disciplinary procedures. Defendant's conduct violated Grace's right to due process and disregarded the protections outlined in the Parent-Student Handbook.

70. Defendant's actions were not only procedurally deficient but also publicly humiliating. Grace was removed from the classroom, instructed to leave school grounds in violation of safety protocols, and told by her teacher, "I don't want you here today. I don't want you in my class." These statements were made in front of peers and staff, causing Grace to feel rejected, isolated, and unsafe.

71. Defendant further inflicted emotional distress by refusing to allow Grace's return, coercing her parents into signing a withdrawal form under duress, and failing to provide any opportunity for dialogue, appeal, or resolution. The exclusion was abrupt, final, and devoid of any procedural safeguards.

72. Defendant's conduct was exacerbated by a pattern of favoritism and bias. Grace, a

Caucasian student in a predominantly Hispanic classroom, was treated differently than similarly situated students. The teacher involved is Hispanic, and the school's disproportionate response to a minor verbal exchange, especially in light of Grace's academic excellence and clean disciplinary record, supports an inference of discriminatory motive.

73. The infliction of emotional distress was entirely preventable had Defendant adhered to its own policies, procedures, and duty of care. Defendant knew or should have known that its student body includes individuals of diverse racial backgrounds and that exclusion without process would cause severe harm.

74. Defendant's conduct was so extreme and outrageous as to exceed all bounds of decency in a civilized society. It was either committed with actual malice and intent to harm, or with reckless disregard for the emotional impact on Grace and her family.

75. As a direct and proximate result of Defendant's conduct, GRACE RIGGS suffered severe emotional distress, including anxiety, humiliation, and disruption of her academic and social development. She required medical evaluation and counseling.

76. Plaintiffs TROY and SHANNON RIGGS also suffered emotional harm, including anguish, humiliation, and disruption to their family life. They were denied the opportunity to advocate for their child, forced to secure alternative education under duress, and endured reputational harm within their community.

77. Plaintiffs are entitled to compensatory damages for emotional distress, punitive damages for Defendant's malicious or reckless conduct, and any other relief the Court deems just and proper.

## COUNT VII
## NEGLIGENT SUPERVISION

78. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

79. At all times relevant hereto, Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") held itself out to the public as a licensed and professional Catholic institution of general education, capable of providing competent, ethical, and inclusive educational services to students and families.

80. Defendant owed a duty of care to Plaintiffs to ensure that its faculty and staff were properly trained, supervised, and held accountable for their conduct toward students. Defendant further owed a duty to enforce its own safety protocols and disciplinary procedures in a manner consistent with its published policies and the reasonable expectations of enrolled families.

81. MIQ breached this duty by failing to supervise the classroom teacher who instructed GRACE RIGGS to leave the classroom and go outside alone, in direct violation of the school's own safety rules prohibiting unsupervised student movement. MIQ further failed to intervene or correct the teacher's conduct when she publicly humiliated Grace, refused to allow her return, and emptied her desk without notice or hearing.

82. MIQ's failure to supervise its staff and enforce its own protocols resulted in Grace being placed in unsafe, emotionally damaging, and academically disruptive circumstances. The school's inaction and procedural violations directly contributed to Grace's exclusion from the educational environment and the emotional harm she suffered.

83. As a direct and proximate result of Defendant's negligent supervision, GRACE RIGGS suffered emotional distress, anxiety, and disruption of her academic progress. She required medical evaluation and counseling.

84. Plaintiffs TROY and SHANNON RIGGS also suffered emotional harm, reputational damage, and financial loss. They were forced to secure alternative educational arrangements under duress and were denied the opportunity to advocate for their child in a fair and transparent process.

85. Plaintiffs are entitled to compensatory damages for Defendant's negligent supervision, including restitution, emotional distress damages, and any other relief the Court deems just and proper.

**COUNT VIII**
**UNJUST ENRICHMENT**

86. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

87. Plaintiffs TROY and SHANNON RIGGS paid tuition totaling $6,347 to Defendant MARY IMMACULATE QUEEN SCHOOL ("MIQ") for the 2024–2025 academic year, in exchange for educational services for their daughter, GRACE RIGGS.

88. MIQ accepted and retained these tuition payments while failing to provide the services promised. Specifically, MIQ excluded Grace from the classroom, denied her access to instruction, and ultimately barred her from returning to school—without notice, hearing, or adherence to its own disciplinary procedures.

89. Plaintiffs were not offered any refund or prorated reimbursement, despite the school's refusal to educate their daughter and its failure to follow its own policies. MIQ's retention of tuition under these circumstances is inequitable and unjust.

90. MIQ's conduct resulted in a financial windfall at Plaintiffs' expense, as the school retained tuition payments while denying the corresponding services and benefits.

91. As a result, MIQ has been unjustly enriched, and equity demands that the school disgorge the funds wrongfully retained.

92. Plaintiffs seek restitution of all tuition and fees paid for services that were denied, along with any other relief the Court deems just and proper.

**PRAYER FOR RELIEF**

93. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiffs TROY RIGGS and SHANNON RIGGS, individually and on behalf of their minor child GRACE RIGGS, demand judgment against Defendant MARY IMMACULATE QUEEN SCHOOL, and in the alternative, for general, compensatory, and punitive damages; restitution of tuition and fees paid; reasonable attorney's fees and costs of suit; pre- and post-judgment interest; and any further relief which the Court may deem equitable and just.

## JURY DEMAND

94. Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## CERTIFICATION

95. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*[Signature Block on Next Page]*

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: September 26, 2026

*/s/ Renee Walker*

Renee Walker, Esquire
California Bar No. 138283
3003 N Central Avenue, Suite 685
Phoenix, AZ 85012
Telephone: (480) 745-5863
Fax: (856) 677-9083
Renee.Walker@llgnational.com
*Attorney for Plaintiff*